UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ROBERT PLASTER,

               Petitioner,               Case No. 2:17-cv-132

v.                                      Honorable Janet T. Neff

CONNIE HORTON,

               Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Robert Plaster is incarcerated with the Michigan Department of Corrections at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan. Following a three-day jury trial in the Ionia County Circuit Court, Petitioner was convicted of first-degree criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b(1)(c); two counts of participation in child sexually abusive material or activity (CSAMA), in violation of Mich. Comp. Laws § 750.145c(2); two counts of using a computer to commit a crime, in violation of Mich. Comp. Laws § 752.796; and one count of possession of child sexually abusive material, in violation of Mich. Comp. Laws § 750.145c(4)(a). Petitioner was also convicted of furnishing alcohol to a minor, in violation of Mich. Comp. Laws § 436.1701, a misdemeanor.

On October 1, 2012, the court sentenced Petitioner. The court imposed a 60-day sentence for the misdemeanor with credit for 60 days served. The court imposed concurrent sentences of 7 to 20 years for the two CSAMA counts and one of the computer-crime counts, 4 to 7 years on the other computer-crime count, and 1 to 4 years on the possession count. Those

sentences were to be served consecutively to a sentence of 15 to 35 years for CSC-I.  Petitioner

was credited for 403 days already served against his CSC-I sentence.

On July 26, 2017, Petitioner filed his habeas corpus petition raising five grounds

for relief, as follows:

I. Petitioner is entitled to resentencing because multiple offense and prior record variables were incorrectly scored, resulting in an inappropriately inflated sentencing guidelines range.  Petitioner's constitutional due process right[s] to be sentenced based on accurate information were thus denied.

II. Petitioner's convictions must be reversed where the evidence was legally insufficient to prove guilt beyond a reasonable doubt as required by the Fifth and Fourteenth Amendments to the United States Constitution.

III. Petitioner was denied his constitutional right to effective assistance of counsel where trial counsel failed to address an improper search warrant in violation of the federal constitution.

IV. Petitioner was denied his due process right to a fair trial where the prosecutor committed acts of prosecutorial misconduct during opening and closing arguments in violation of the federal constitution.

V. Appellate counsel was ineffective for failing to raise the foregoing claims on direct appeal thereby violating Petitioner's Sixth Amendment right to the effective assistance of appellate counsel.

(Pet., ECF No. 1, PageID.7, 9, 12, 14, 17.)  Respondent has filed an answer to the petition (ECF

No. 8) stating that the grounds should be denied because they are procedurally defaulted and/or

meritless.  Upon review and applying the standards of the Antiterrorism and Effective Death

Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are

procedurally defaulted or meritless.  Accordingly, I recommend that the petition be denied.

## **Discussion**

### I.    **Factual allegations**

The facts underlying Petitioner's criminal prosecution were summarized by the

Michigan Court of Appeals as follows:

[Petitioner's] son invited a group of friends, including two female friends, both aged 15, who were the victims in this case, to a party at his and [Petitioner's] house. [Petitioner] supplied vodka for the party.  During the party, one of the victims, PR, left the house to go to a friend's house.  At approximately 4:00 a.m., [Petitioner] telephoned the friend and demanded that PR return to his house.  The friend dropped PR off at a Meijer parking lot, and [Petitioner] drove her back to his house. At the house, PR began vomiting and she took a shower.  [Petitioner's] son and the other victim, MR, also entered the shower and began engaging in sexual activities. [Petitioner] entered the bathroom and filmed his son and the victims in the shower with a video camera.  [Petitioner] encouraged the victims to show their breasts to the camera, and the two victims rubbed each other's breasts.  PR left the shower to dry her hair and [Petitioner's] son went to his bedroom with MR to engage in sexual intercourse.  Immediately after drying her hair, PR joined [Petitioner's] son and MR and all three engaged in sexual activities.  [Petitioner] walked into the bedroom and congratulated his son, and his son told him to leave.  [Petitioner] left the room but reentered a few minutes later, and PR testified that [Petitioner] inserted his finger into her vagina after entering the room.  The video recording of the shower was later found on [Petitioner's] laptop computer.

(Mich. Ct. App. Op., ECF No. 9-18, PageID.1724-1725.)

Petitioner acknowledges that there was  testimony to support the factual statement provided by the court of appeals.  Nonetheless, he claims that the witnesses—his son, PR, MR, and essentially every other witness—lied.  Petitioner claims he did not provide alcohol, he did not enter the bathroom, that is not his voice on the video recording, he did not enter his son's room, and he did not insert his finger into PR's vagina.  Petitioner provided sworn testimony to that effect at trial.  The jury clearly did not believe Petitioner but did believe the other witnesses.  After a couple of hours of deliberation, the jury found Petitioner guilty of all charges.

Petitioner directly appealed his convictions to the Michigan Court of Appeals.  In a brief prepared with the assistance of appointed counsel, Petitioner raised two issues that roughly track habeas issues I and II.  Petitioner also filed a *pro per* court of appeals brief raising eighteen more issues.  By way of that brief, Petitioner raised additional scoring issues to supplement those raised by his counsel.  Those supplemental scoring issues are incorporated into habeas issue I. Petitioner's *pro per* brief also raised issues that were identical to habeas issue III and at least similar

to habeas issue V.  Petitioner's *pro per* appellate brief also argued that the prosecutor committed misconduct; however, the misconduct alleged on appeal does not appear to be the same misconduct that Petitioner raises in habeas issue IV.

The court of appeals addressed and rejected on the merits each of the scoring issues Petitioner raised.  The court also rejected Petitioner's claim that the evidence against him was insufficient.  As to the remainder of Petitioner's claim—all from his *pro per* brief—the court concluded Petitioner had abandoned them because he "fail[ed] to adequately explain and argue the merits of his claims and fail[ed] to cite to any supporting legal authority . . . [or] to the record." (Mich. Ct. App. Op., ECF No. 9-18, PageID.1727-1728.)  The court noted further that even if Petitioner had not abandoned the claims, "they provide no basis for reversal."  (*Id*., PageID.1728.)

Petitioner filed a timely *pro per* application for leave to appeal in the Michigan Supreme Court raising all twenty of his court of appeals issues.  By order entered May 28, 2015, the supreme court denied the application "because [the court was] not persuaded that the questions presented should be reviewed . . . ."  (Mich. Order, ECF No. 9-23, PageID.2021.)

Petitioner returned to the trial court and filed a motion for relief from judgment raising the same issues he raises in this petition.  Petitioner's motion issue I tracked the scoring issues he raised on direct appeal; however, his argument included a new claim: that he was impermissibly sentenced based upon judge-found facts.  Petitioner's motion issue II is identical to the issue he raised on direct appeal.  Petitioner's motion issue III is identical to the issue he raised on direct appeal. Petitioner's motion issue IV, however, raised new prosecutorial misconduct claims.

By opinion issued November 25, 2015, the Ionia County Circuit Court denied Petitioner's motion for relief from judgment.  (Ionia Cty. Cir. Ct. Op., ECF No. 9-25,

PageID.2436-2438.)   The trial court relied upon Michigan Court Rule 6.508(D) to deny Petitioner's motion.  That rule provides that the court may not grant relief in three circumstances: (1) if the judgment is still subject to challenge on appeal; (2) if the motion raises grounds for relief that were decided against the Petitioner in a prior appeal; or (3) if the motion raises grounds that could have been raised in a prior appeal, were not raised, and the Petitioner fails to show good cause for his or her failure to raise the grounds and actual prejudice, or if the Petitioner demonstrates actual innocence.  Mich. Ct. R. 6.508(D).  Even though several of Petitioner's motion grounds were previously raised and decided against him, the trial court reviewed all of the claims as if Petitioner were raising them for the first time.

As cause for Petitioner's failure to previously raise the issues, Petitioner offered the ineffective assistance of his appellate counsel.  The trial court concluded that Petitioner had failed to show that appellate counsel was professionally unreasonable when he excluded the issues from his appellate brief.  Moreover, the trial court concluded all of the issues were meritless; therefore, Petitioner had failed to demonstrate any prejudice.

Petitioner filed applications for leave to appeal the trial court's order in the Michigan Court of Appeals and the Michigan Supreme Court.  Those courts denied leave by form orders entered April 4, 2016, and November 30, 2016, respectively.  (Mich. Ct. App. Order, ECF No. 9-25, PageID.2370; Mich. Order, ECF No. 9-26, PageID.2627.)  This timely petition followed.

## II.    AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a

person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being

presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (*en banc*); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. Sentence Guidelines Scoring (Habeas Issue I)

Petitioner contends that the trial court erred in scoring virtually every offense and one prior record variable when determining Petitioner's minimum sentence range under the Michigan guidelines. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases).

The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Claims concerning the improper application of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).

It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 68. Furthermore, "'a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Richey*, 546 U.S. at 76). Thus, this Court is bound by the state court's conclusion that the trial court properly applied the Michigan sentencing guidelines in scoring each of the offense and prior record variables.

To the extent Petitioner intends to suggest that the resulting sentences were disproportionate under *People v. Milbourn*, 461 N.W.2d. 1 (Mich. 1990), he fails to raise a cognizable habeas claim. In *Milbourn*, the Michigan Supreme Court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender. *Milbourn*, 461 N.W.2d at 9-10; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003). It is plain that *Milbourn* was decided under state, not federal, principles. *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL

236677, at *2 (6th Cir. Apr. 21, 1995); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994). As previously discussed, a federal court may grant habeas relief solely on the basis of federal law and has no power to intervene on the basis of a perceived error of state law.  *See Wilson*, 562 U.S. at 5; *Bradshaw*, 546 U.S. at 76; *Pulley*, 465 U.S. at 41.  Thus, any claim based on *Milbourn* is not cognizable in a habeas corpus action.

Moreover, any claim that Petitioner's sentence was disproportionate under the Eighth Amendment is without merit.  The United States Constitution does not require strict proportionality between a crime and its punishment.  *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000).  "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment."  *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)).  A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'"  *Austin*, 213 F.3d at 302 (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)).  Further, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole."  *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law.  Petitioner's sentence therefore does not present the extraordinary case that runs afoul of the Eighth Amendment's ban on cruel and unusual punishment.

Perhaps because Petitioner is aware of these limits, he couches his challenge in a claim that the trial court relied on "incorrect" information in calculating Petitioner's sentence guidelines.  A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude."  *Roberts v. United States,* 445 U.S. 552, 556 (1980); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948).  To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence.  *Tucker*, 404 U.S. at 447; *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988); *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984).  A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence.  *Tucker*, 404 U.S. at 444, 447.

Petitioner does not identify any facts the court at sentencing relied upon that were materially false.  Instead, he contends the evidence was insufficient, the court's conclusions were wrong, or that the court applied the guidelines incorrectly.  He therefore fails to demonstrate that the court's scoring of the offense variables and resulting sentence violated due process.  *Tucker*, 404 U.S. at 447; *United States v. Lanning*, 633 F.3d 469, 477 (6th Cir. 2011) (rejecting due process claim where the petitioner failed to point to specific inaccurate information relied upon by the court).

Finally, Petitioner attacks the scoring of the sentence guidelines variables because the court relied upon facts that were neither found by the jury nor admitted by Petitioner.  This argument is based on a line of Supreme Court cases beginning with *Apprendi v. New Jersey*, 530

10

U.S. 466 (2000), and including *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013).

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence.

In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme, under which the maximum penalty could be increased by judicial fact-finding. The *Blakely* Court held that the state guideline scheme violated the Sixth and Fourteenth Amendments, and reiterated the rule that any fact that increased the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt." *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303). A year later, in *Booker*, 543 U.S. at 220, the Supreme Court applied the *Blakely* reasoning to the federal sentencing guidelines to conclude that the federal sentencing guidelines are subject to the jury trial requirements of the Sixth Amendment.

Then, in *Alleyne*, 570 U.S. at 99, the Supreme Court held that the *Blakely* line of cases applies equally to mandatory minimum sentences. Shortly thereafter, the Michigan Court of Appeals concluded that *Alleyne* did not prohibit judicial fact-finding in scoring the Michigan sentencing guidelines that generated the minimum range under Michigan's indeterminate sentencing regimen. *See People v. Herron,* 845 N.W.2d 533, 539 (Mich. App. 2013).[1] The Sixth Circuit also suggested that *Alleyne* did not decide the question whether judicial fact-finding under Michigan's indeterminate sentencing scheme violated the Sixth Amendment. *See Kittka v. Franks*, 539 F. App'x 668, 673 (6th Cir. 2013). Because of that distinguishing factor, the Sixth Circuit

---

[1] Under Michigan's system, the guideline determination affects only the minimum term. The maximum term, generally, is the maximum punishment permitted by statute.

indicated that the question was not a matter of clearly established Supreme Court precedent.  *Id.* (citing *Montes v. Trombley*, 599 F.3d 490, 498 (6th Cir. 2010)); *see also Saccoccia v. Farley*, 573 F. App'x 483, 485 (6th Cir. 2014) ("But *Alleyne* held only that 'facts that increase a mandatory *statutory* minimum [are] part of the substantive offense.'. . . It said nothing about guidelines sentencing factors . . . .") (quoting *Alleyne*, 570 U.S. at 113 (emphasis added)).  The Sixth Circuit has since clarified that "Michigan's sentencing regime violated *Alleyne*'s prohibition on the use of judge-found facts to increase mandatory minimum sentences."  *Robinson v. Woods*, 901 F.3d 710, 716 (6th Cir. 2018).

The Michigan Supreme Court reached that same conclusion in a 5-2 decision in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015).  The court reasoned that, because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range," they increase the "mandatory minimum" sentence under *Alleyne*. *Lockridge*, 870 N.W.2d at 506 (emphasis in original).  Consequently, the *Lockridge* court held that the mandatory application of Michigan's sentencing guidelines was unconstitutional.  The Court's remedy was to make the guidelines advisory only.  *Id.* at 520-21 (relying on *Booker,* 543 U.S. at 264-265 (holding that the remedy for the unconstitutionality of the mandatory federal sentencing guidelines was to sever only the mandatory component, still requiring courts to consider the guidelines, but making them advisory and subject to review for reasonableness)).

The trial court refused to consider the merits of Petitioner's *Alleyne/Lockridge* claim because Petitioner failed to raise the issue on his initial appeal and did not demonstrate cause for that failure.  Under Michigan Court Rule 6.508(D)(3), those circumstances barred relief from judgment.

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982).  To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim.  *See Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster*, 324 F.3d at 436-37; *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice.  *See House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52.  The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence.  *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.  *Id*. (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

A state law procedural rule is adequate and independent when it was "firmly established and regularly followed" at the time of the asserted procedural default.  *Rogers v.*

*Howes*, 144 F.3d 990, 992 (6th Cir. 1998) (citing *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)).

"'[T]he adequacy of state procedural bars to the assertion of federal questions . . . is not within the State's prerogative finally to decide; rather adequacy is itself a federal question.'"  *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Lee v. Kemna*, 534 U.S. 362, 375 (2002)) (other internal quotations omitted).  The Sixth Circuit has recognized that Michigan Court Rule 6.508(D)(3) is "an independent and adequate state ground sufficient for procedural default."  *Amos v. Renico*, 683 F.3d 720, 733 (6th Cir. 2012).

To determine whether Petitioner has been denied relief based on a procedural default, we look to the last "reasoned judgment rejecting the [federal] claim."  *Ylst*, 501 U.S. at 803.  The doctrine is applicable if "the last state court to review [the prisoner's] conviction 'clearly and expressly' relied on [the prisoner's] procedural default in its decision affirming Petitioner's conviction."  *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994).  Neither the Michigan Supreme Court nor the Michigan Court of Appeals specifically mention Mich. Ct. R. 6.508(D)(3) in their form orders denying Petitioner's applications for leave to appeal.

In *Guilmette v. Howes*, 624 F.3d 286, 289-90 (6th Cir. 2010), the Sixth Circuit, in an *en banc* decision, held that brief form orders by the Michigan appellate courts invoking Mich. Ct. R. 6.508(D) are unexplained orders within the meaning of *Ylst*, 501 U.S. at 803.  Such form orders are presumed to uphold or reject the last reasoned decision below.  *Guilmette*, 624 F.3d at 291-92 (citing *Ylst*, 501 U.S. at 803).  As a result, absent an explained decision from a lower Michigan court applying the procedural prohibition of Rule 6.508(D), the federal court may not invoke procedural default to dispose of a habeas claim that has been rejected by the Michigan courts on the grounds of Mich. Ct. R. 6.508(D).

In *Wilson v. Sellers*, 138 S. Ct. 1188, 1193-94 (2018), the Supreme Court held that, in reviewing the basis for a summary appellate order of affirmance, the habeas court should apply the doctrine of *Ylst*, and "look through" the unexplained order to the last reasoned decision of the state court. This applies beyond determining whether the affirmance was based on a procedural default or the merits. "[W]here, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits." *Ylst*, 501 U.S. at 803. Accordingly, this Court may rely on the procedural bar that prompted the trial court to deny Petitioner's request for relief.

Identifying the procedural default does not end the inquiry. The Court may consider Petitioner's habeas issues on their merits if Petitioner establishes cause for the default and resulting prejudice. As cause, Petitioner offers nothing more than the cause rejected by the trial court: the ineffective assistance of his appellate counsel.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light

15

of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The trial court applied the *Strickland* standard in rejecting Petitioner's claim that his appellate counsel rendered ineffective assistance.  (Ionia Cty. Cir. Ct. Order, ECF No. 9-25, PageID.2436-2438.)  The trial court explained that appellate counsel, to be effective, is not required to raise every possible issue.  (*Id.*)

The court's analysis is entirely consistent with clearly established federal law.  An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).  To

16

require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688.  As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000).  In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

Under *Strickland*, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.  Measuring Petitioner's counsel's performance in light of the circumstances that existed when he filed Petitioner's brief on appeal reveals that counsel was not ineffective for failing to raise the *Alleyne/Lockridge* argument.  Neither *Alleyne* nor *Lockridge* had been decided at the time appellate counsel filed his brief.  *See* https://courts.michigan.gov/opinions_orders (search court of appeals docket number 312897) (visited July 2, 2019); *Alleyne*, 570 U.S. at 99; *Lockridge*, 870 N.W.2d at 502.  Indeed, at that time, clearly established federal law held that the use of judge-found facts to elevate a mandatory minimum term of imprisonment was constitutionally permissible.  *Harris v. United States*, 536 U.S. 545 (2002).

Moreover, even after *Alleyne*, and before Petitioner's appellate panel heard oral argument, the Michigan courts concluded that *Alleyne* did not apply to Michigan's guideline sentencing scheme.  *People v. Herron*, 845 N.W. 2d 533, 537-540 (Mich. Ct. App. 2013) *overruled by Lockridge*, 870 N.W.2d at 502.  Therefore, appellate counsel's decision to forego the issue can

17

hardly be characterized as professionally unreasonable and cannot serve as cause to excuse the procedural default. Additionally, the trial court's application of *Strickland* to reject Petitioner's ineffective assistance of appellate counsel claim was consistent with clearly established federal law and reasonable.

Because Petitioner has failed to establish cause for his procedural default, the Court is barred from considering his claims unless Petitioner can demonstrate such review is required to prevent a fundamental miscarriage of justice.  Such a miscarriage would occur if Petitioner demonstrated that he was actually innocent.  Petitioner has not demonstrated his actual innocence. Therefore, the Court's review of Petitioner's *Alleyne/Lockridge* claim is barred by the doctrine of procedural default.

### IV.    Sufficiency of the Evidence

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Id.*  Issues of credibility may not be reviewed by the habeas court under this standard.  *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).  Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law.  *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

18

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.  Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case:  First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).  This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals rejected Petitioner's sufficiency claim:

> Although defendant sets forth the correct standards of review, defendant fails to cite any law supporting his argument that the evidence was insufficient to support his convictions.  Moreover, defendant fails even to address the elements and statutory language of each crime.  "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment of an issue with little or no citation of supporting authority." *People v. Kelly*, 231 Mich. App. 627, 640-641; 588 N.W.2d 480 (1998).  Thus, we find that defendant's sufficiency argument is abandoned.  Even if it were not, defendant's argument seems to be based solely on credibility and the weight of the evidence, and we will not interfere with the jury's determinations regarding these issues. *People v. Unger*, 278 Mich. App. 210, 222; 749 N.W.2d 272 (2008).

(Mich. Ct. App. Op., ECF No. 9-18, PageID.1726.)  The state appellate court's rejection of a sufficiency argument that is directed toward credibility and weight is entirely consistent with the clearly established federal law of *Jackson*.

Petitioner's sufficiency argument in this Court suffers the same defects as the argument he raised in the Michigan Court of Appeals.  Petitioner's challenge to the sufficiency of the evidence regarding his CSC-I conviction is based not on any shortcoming with respect to the

evidence of his digital penetration of the victim, but on his contention that penetration and the making of the shower video were not temporally proximate enough to elevate the penetration to first-degree.

The jury found Petitioner guilty of violating Michigan Compiled Laws § 750.520b(1)(c) which states: "A person is guilty of criminal sexual conduct in the first degree if he . . . engages in sexual penetration with another person and . . . sexual penetration occurs under circumstances involving the commission of any other felony."  The trial court instructed the jury regarding this crime as follows:

> [I]n count one defendant is charged with first degree criminal sexual conduct.  To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt.  First, that the defendant engaged in a sexual act that involved entry into [the victim's] genital opening with the defendant's finger.  Any entry, no matter how slight, is enough.  It does not matter whether the sexual act was completed or semen was ejaculated.  Second, that the alleged sexual act occurred under circumstances that also involved child sexually abusive activity.

(Trial Tr. VI, ECF No. 9-15, PageID.1589.)

Petitioner contends that because the alleged child sexually abusive activity—the making of the shower video—and the penetration occurred hours apart at different locations in the house, the penetration did not occur under circumstances that "involved" the child sexually abusive activity.  (Pet'r's Br., ECF No. 3, PageID.95.)  The Michigan Court of Appeals rejected Petitioner's claim on direct appeal.  (Mich. Ct. App. Op., ECF No. 9-18, PageID.1726.)

The state court's determinations regarding the elements of the crime—what it means for penetration to occur under circumstances that involved the child sexually abusive activity—are axiomatically correct.  It is the prerogative of the state to define the elements of the crime and that definition binds the federal courts.  *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Jackson*, 443 U.S. at 324 n.16 ("The

respondents have suggested that this constitutional standard will invite intrusions upon the power

of the States to define criminal offenses. Quite to the contrary, the standard must be applied with

explicit reference to the substantive elements of the criminal offense as defined by state law.").

Therefore, Petitioner's insufficiency argument centered on the meaning of "involved" is meritless.

       Petitioner's argument includes an additional fundamental flaw.  The argument

depends upon considering the testimony in a light that favors Petitioner, not the prosecution.  The

timeline that might support Petitioner's argument is the timeline drawn from his own testimony.

The penetration victim, however, said the bathroom depicted in the video was just a few feet from

the bedroom where the penetration occurred and that the events were separated by just a few

minutes.  (Trial Tr. I, ECF No. 9-10, PageID.610-620.)  Viewing the victim's testimony in a light

that favors the prosecution, as is required under *Jackson*, completely undercuts Petitioner's

argument.  It is Petitioner's argument, therefore, that is contrary to clearly established federal law.

The state appellate court's determination of the sufficiency of the evidence, on the other hand, was

entirely consistent with *Jackson*.

       Petitioner's twisting of the *Jackson* standard is revealed again in his claim that there

was insufficient evidence of using a computer to commit a crime.  The two counts of using a

computer to commit a crime were based upon the recording of the video and the downloading of

the video to a computer.  Petitioner argues, "there was conflicting testimony as to who may have

downloaded pictures to the computer . . . ."  (Pet'r's Br., ECF No. 3, PageID.96.)  There is no

dispute that the video was recorded on the camera and there is no dispute that the video was

downloaded to the computer.  There was no testimony that any person directly witnessed the

download.  Petitioner's son suggested that Petitioner downloaded the video; Petitioner suggested

that his son downloaded the video.  The prosecutor encouraged the jurors to infer from the evidence that it was Petitioner; defense counsel invited the jurors to infer that it was Petitioner's son.

The state of the evidence described by Petitioner does not support his contention that the evidence was insufficient.  Viewing the evidence in a light most favorable to the prosecution, and reserving to the jury the right to infer ultimate facts from basic facts, as required by *Jackson*, the evidence was sufficient.

Petitioner's argument with regard to the child sexually abusive activity counts suffers the same flaw.  He combs the record for evidence that favors him and ignores the evidence that supports the prosecutor's position.  Based on the testimony of the videotaped girls, however, there is plainly sufficient evidence to support the jury's determination of Petitioner's guilt with regard to those charges as well.  Petitioner's attempt to turn the *Jackson* standard on its head to favor him is simply frivolous.  Petitioner is not entitled to habeas relief on his insufficiency claims.[2]

## V.    Trial Counsel's Failure to Challenge the Search Warrant

Petitioner contends that critical evidence seized by the police—the computer and camera—were taken in an invalid search.  Specifically, Petitioner claims the police seized the items before the search warrant was issued.

Petitioner's argument is constructed on a questionable foundation.  Petitioner was not at home when police conducted the search of his home.  He learned of the search by way of a telephone call from his friend Joshua Miller.  Petitioner reviewed his telephone records and found a telephone call from Joshua Miller around 3:00 p.m.  (Phone Examination Report, ECF No. 9-24,

---

[2] Petitioner also challenges the sufficiency of the evidence supporting his conviction for furnishing alcohol to a minor. Petitioner is not in custody pursuant to that conviction and has never been in custody pursuant to that conviction—he was sentenced to time served.  Accordingly, even if the evidence were insufficient, he would not be entitled to habeas relief.

PageID.2366-2367.)   The  warrant,  however,  was  not  issued  until  after  6:00  p.m.   Therefore, Petitioner reasons, the search must have preceded the issuance of the warrant.

Detective Hesche, however, testified that he prepared the affidavit in support of the warrant and, after the warrant was issued, executed the warrant at approximately 6:00 p.m.  (Trial Tr. III, ECF 9-12, PageID.964-969.)  Petitioner's telephone records also show telephone calls from Joshua Miller to Petitioner that are consistent with the times described by Detective Hesche. (Phone Examination Report, ECF No. 9-24, PageID.2366-2367.)

The focus of Petitioner's constitutional attack is not the purportedly illegal search, it is trial counsel's failure to challenge the search based upon the argument raised by Petitioner. Petitioner claims that counsel's failure amounts to ineffective assistance

As noted above, under *Strickland*, to succeed on his ineffective assistance claim, Petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness.  Petitioner cannot do so here because counsel explained in some detail on the record why she did not pursue Petitioner's Fourth Amendment claim:

> [T]he first I heard about it, as his lawyer, was a week ago with my investigator.  He indicated that he felt not that the search warrant was invalid on its face, but perhaps the search warrant was being executed---that they were actually searching his house prior to the search warrant actually being signed by the magistrate-Magistrate Pinnow in this case.  I did investigate that.  I went to this Detective Hesche; I explained the situation.  I went through the search warrant.  Detective Hesche was very gracious.  He got his supervisor's permission and gave me the actual day sheets of all the officers that were involved in the search warrant, indicating the time that they would have started to execute the search warrant on each of the different officer's day sheets.  They all corresponded with after—I believe it was 6:15 when the warrant was actually signed and faxed back.  So I indicated to him that I had looked into that issue, and I believed that there was no actual issue to bring--bring before the Court.  But since he brought that up I just thought I would place it on the record.

(Trial Tr. I, ECF No. 9-10, PageID.550-551.)

Trial counsel had to balance, on the one hand, a claim by her client, who was not present at the time of the search, that the search was conducted around 3:00 p.m. and, on the other hand, claims by multiple officers that the search was conducted around 6:00 p.m..  The officers' claims were backed up by contemporaneously created records.  Petitioner's claim was supported by—indeed it entirely depended upon—the existence of a telephone call from Joshua Miller to Petitioner.  Records available to counsel revealed such a call around 3:00 p.m., but they also revealed a call around 6:00 p.m.  Under those circumstances, counsel's decision to forego the Fourth Amendment challenge urged by Petitioner, a decision explained on the record, is not professionally unreasonable.  The trial court's rejection of Petitioner's claim is, therefore, neither contrary to, nor an unreasonable application of, *Strickland*, the clearly established federal law regarding ineffective assistance of counsel.

## VI.    Prosecutorial Misconduct

Petitioner has combed through the trial transcript and identified four sentences in the prosecutor's argument that Petitioner contends rendered his trial fundamentally unfair:

During opening statement, the prosecutor declared:

(OPENING STATEMENT)

Prosecutor: "The defendant did two things, one he violated a parent's worst nightmare here." (p. 149-150, line 25)

* * *

"All the elements are satisfied then boom, he's guilty" (p. 139, line 13-14)

During closing argument, the prosecutor declared:

(CLOSING ARGUMENT)

Prosecutor: "that this man, who [the victim] called a father figure was in fact, a sexual predator who groom[ed] his victim.  That's right.  He groomed her." (p. 311, line 12-14)

* * *

"He's every parent's worst nightmare.  He's the father out there videotaping incident."  (p. 312, line 12-14)

(Pet'r's Br., ECF No. 3, PageID.114.)  The trial court rejected Petitioner's claim, stating:

The alleged prosecutorial misconduct consists of four alleged improprieties and could legitimately be construed as appropriate comments on the evidence.  The court also cured any alleged impropriety by its instructions to the jury that lawyers['] statements and arguments are not evidence . . . ."

(Ionia Cty. Cir. Ct. Order, ECF No. 9-25, PageID.2437.)

The scope of review of prosecutorial misconduct in a habeas corpus action is narrow.  A petitioner must do more than show erroneous conduct.  "The relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. De Christoforo*, 416 U.S. 637, 643 (1974)).  The habeas court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental.  *See United States v. Young*, 470 U.S. 1, 11-12 (1985).  In addition, the court may view any misconduct in light of the strength of the competent proofs tending to establish guilt.  *See Angel v. Overburg*, 682 F.2d 605, 608 (6th Cir. 1982) (*en banc*).  "The touchstone of due-process analysis is the fairness of the trial, not the culpability of the prosecutor."  *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993) (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).

A prosecutor is not limited to simply recounting the evidence during closing argument.  He may also argue reasonable inferences from the evidence.  *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000); *see also Young*, 470 U.S. at 8 n.5 (acknowledging as a useful guideline the American Bar Association Standard: "The prosecutor may argue all reasonable inferences from the evidence.").  Even when a prosecutor strays beyond permissible argument, habeas relief may not be necessary.  The giving of cautionary instructions is relevant to determining whether

fundamental fairness was denied.  *Serra*, 4 F.3d at 1356.  And, where such instructions are given, "[a] jury is presumed to follow its instructions."  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

The trial court's analysis of the isolated comments identified by Petitioner tracks the clearly established federal law set forth above.  The trial court concluded that the prosecutor's comments, in general, were legitimate comments on the evidence.  Moreover, to the extent the prosecutor exceeded the bounds of fair comment, the court gave a curative instruction that the jury should not regard the argument as evidence.

Petitioner contends that the prosecutor's comments in his case were the same as the prosecutor's comments in *Cox v. Curtin*, 698 F. Supp. 2d 918, 925-26 (W.D. Mich. 2010).  In *Cox*, this Court concluded that a prosecutor's comments suggesting that the defendant repeatedly preyed on young boys and inviting the jury to take the defendant off the street, warranted habeas relief.  *Id*.  Although there may be some similarity between words used in *Cox* and words used in Petitioner's case, e.g. "sexual predator," the prosecutor did not suggest in Petitioner's case that Petitioner repeatedly preyed on young women.  The prosecutor's comments were based entirely on Petitioner's predatory behavior with respect to the victim.  In that regard, the prosecutor's comments here constitute fair comment on the evidence while the prosecutor's comments in *Cox* did not.

Moreover, even if Petitioner's case and Cox's case were similar, *Cox* is not clearly established federal law.  Petitioner does not identify any United States Supreme Court precedent granting relief based on facts that are materially indistinguishable from Petitioner's case.  Accordingly, Petitioner has failed to demonstrate that the trial court's rejection of his prosecutorial misconduct claim is contrary to, or an unreasonable application of, clearly established federal law.

## VII.    Ineffective Assistance of Appellate Counsel

Finally, Petitioner claims that his appellate counsel rendered ineffective assistance either because he failed to raise Petitioner's habeas issues on appeal or because he failed to raise them effectively.  As discussed in detail above, there is no merit to Petitioner's sentence guidelines scoring challenges, his claims that the evidence was insufficient, his claim that counsel was ineffective for failing to challenge the validity of the search warrant, or his claim that the prosecutor rendered the trial fundamentally unfair with improper argument.  "Omitting meritless arguments is neither professionally unreasonable nor prejudicial."  *Coley*, 706 F.3d at 752. Accordingly, Petitioner's claim that his appellate counsel rendered ineffective assistance is meritless as well.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (*per curiam*).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues

presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

## **Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.

Date:    August 7, 2019                        /s/ *Maarten Vermaat*
                                                MAARTEN VERMAAT
                                                U.S. MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).